## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

THERESA LAGERWAY,

      Plaintiff,

vs.                                                                     No. CV 05-0983 LCS

JO ANNE B. BARNHART,
**Commissioner of the Social
Security Administration,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Plaintiff's Motion to Reverse or Remand

Administrative Agency Decision filed December 16, 2005.  (Doc. 8.)   On July 20, 2005, the

Commissioner of Social Security issued a final decision by denying Plaintiff's request for review

of the Administrative Law Judge's partially favorable decision.  (R. at 6-9.)  This matter comes

before this Court pursuant to 28 U.S.C. § 636(c).  The United States Magistrate Judge, having

meticulously considered the Motion, briefs, administrative record, and applicable law, finds that

this Motion is well-taken and should be **GRANTED** and this case is remanded to the

Commissioner of Social Security for further proceedings consistent with this Memorandum

Opinion and Order.

### I.        STANDARD OF REVIEW

The standard of review in a Social Security appeal is whether the Commissioner's final

decision is supported by substantial evidence and whether he applied the correct legal standards.

*Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).

"Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied

by such relevant evidence as a reasonable mind might accept to support the conclusion." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988) (quotation marks and citations omitted). The decision of an Administrative Law Judge ("A.L.J.") is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record. *Id.* at 805 (citation omitted).

In order to qualify for disability insurance benefits, "a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of [at least] twelve months which prevents the claimant from engaging in substantial gainful activity." *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)). The Secretary has established a five step process for evaluating a disability claim. *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987). At the first four levels of the sequential evaluation process, the claimant must show that she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpart P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *See Gatson v. Bowen*, 838 F.2d 442, 448-449 (10th Cir. 1988).

## II.   PROCEDURAL HISTORY

Plaintiff, now fifty-two years old, protectively filed an application for disability insurance

benefits on August 27, 2002.  (R. at 22, 54.)  Plaintiff alleged her disability began on March 1,

2002 due to multiple sclerosis.  (R. at 22, 67.)  Plaintiff has attended two years of college and has

worked in various jobs involving food preparation and catering prior to the alleged onset of her

disability.  (R. at 22, 68, 73.)

The Social Security Administration denied Plaintiff's claims both initially and at the

reconsideration level.  (R. at 38-41, 44-47.)  Plaintiff retained Representative Michael D.

Armstrong (R. at 26) and appealed the denial of her application on June 12, 2003 by filing a

Request for Hearing by Administrative Law Judge.  (R. at 48-49.)  On April 29, 2004, A.L.J.

William F. Nail, Jr. issued a partially favorable decision, finding that Ms. Lagerway has been

under a disability since May 1, 2003.  (R. at 22-25.)

A.L.J. Nail held a hearing on January 28, 2004; Plaintiff, her husband, Guy Lagerway, and

Vocational Expert ("VE") Pamela Bowan testified.  (R. at 230-63.)  In his opinion, the A.L.J.

analyzed Plaintiff's claim in accordance with the sequential analysis set forth in 20 C.F.R. §

404.1520(a)-(f).  (R. at 45-50.)  At step one of the sequential evaluation, the A.L.J. found that

while Ms. Lagerway worked part-time from her alleged onset date of disability through May,

2003, this part-time work did not constitute substantial gainful activity.  (R. at 23.)  At steps two

and three, the A.L.J. found that Plaintiff's multiple sclerosis is a medically determinable "severe"

impairment.  (*Id.*)  A.L.J. Nail also noted that while there was a singular submission by B.

Holstead, Ph.D. that indicated a depressive syndrome of listings-level severity, the document was

conclusory and unsupported by clinic notes.  (*Id.*)  Consequently, the submission was given little

evidentiary weight.  (*Id.*)  Although the A.L.J. found a severe impairment, he determined that

Plaintiff's overall condition had not met or equaled in severity any disorder described in the

Listing of Impairments, Appendix I, Subpart P, 20 C.F.R. § 401.1501-1599.  (*Id.*)  At step four,

the A.L.J. assessed Plaintiff's Residual Functional Capacity ("RFC") and determined that "Ms.

Lagerway retained an RFC for the performance of 'sedentary' work" from the alleged onset date

of March 1, 2002 through May 1, 2003.  (*Id.*)  As of May 1, 2003, her RFC "had been eroded to

a level in which her condition imposed limitations" exceeding the demands of her past relevant

work.  (R. at 23-24.)  At step five, using the Medical-Vocational Guidelines as a framework, the

A.L.J. found that a finding of "disabled" was directed by Medical-Vocational Rule 202.21, 20

C.F.R. Pt. 220, App. 2, commencing on May 1, 2003.  (R. at 24.)  Further, the A.L.J. noted that

Plaintiff's allegations were credible in accordance with the later onset date established in the

decision.  (R. at 25.)

        Plaintiff filed a Request for Review of Hearing Decision by the Appeals Council on June 8,

2004.  (R. at 16.)  The Appeals Council denied this request for review on July 20, 2005, thereby

making the decision of the A.L.J. the final decision of the Commissioner for purposes of judicial

review.  (R. at 6-8.)  On September 14, 2005, Plaintiff filed this Complaint seeking judicial review

of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  (Doc. 1.)

## III.    RELEVANT  MEDICAL HISTORY

        Ms. Lagerway was diagnosed with multiple sclerosis in 2002, but the record establishes

that she has a history of symptoms associated with the disease dating as far back as1993.  (R. at

149, 169.)  These symptoms have included vision problems, hearing loss, numbness in her face,

and leg weakness.  (R. at 148-49, 158-59, 175-76.)  Ms. Lagerway's symptoms became worse

during the time period at issue in this case, March, 2002 through May, 2003.  Plaintiff began

seeing Dr. Daniel Shibuya, M.D. in January, 2002.  (R. at 159.)  At that time Plaintiff reported

that the weakness in her legs made her feel like she had to concentrate in order to walk. (*Id.*)
Plaintiff's motor examination revealed normal bulk and tone and 5/5 strength in all muscle groups
tested. (R. at 158.) Dr. Shibuya also noted a nonfocal neurologic examination and a normal-
based gait and a normal tandem, tip-toe, and heel walk. (*Id.*) Glen P. Wilson, M.D. performed an
MRI on Plaintiff on January 24, 2002. (R. at 146.) The MRI revealed a few scattered white
matter lesions "very characteristic" of multiple sclerosis, the number and size of which had
increased since a prior MRI performed in 1997. (R. at 146, 150.) On January 31, 2002, Ms.
Lagerway underwent a Somatosensory Evoked Potential[1] study, which showed "some signal
transmission abnormality through the brain or spinal cord [ ] consistent with demyelinating
disease." (R. at 151-52.)

Plaintiff returned to Dr. Shibuya in August, 2002,[2] reporting no new symptoms but was
having many problems with pre-existing symptoms including leg weakness, tiredness in her legs,
oscillopsia,[3] and fatigue. Plaintiff reported "more weakness in her legs and a feeling that her legs
[were] going to give out on her" in October, 2002. (R. at 148.) Dr. Shibuya noticed subtle
weaknesses in Plaintiff's legs during the October visit compared to the "pretty full [leg] strength"
he saw in January. (*Id.*) Plaintiff's weakness and fatigue continued to worsen through January,

---

[1] "Somatosensory Evoked Potentials ["SSEPs] are used for clinical diagnosis in patients with neurologic disease . . . ." Somatosensory Evoked Potentials: General Principles, http://www.emedicine.com/neuro/topic640.htm (last visited Mar. 22, 2006). "Evoked potentials are the electrical signals generated by the nervous system in response to sensory stimuli." *Id.* "Abnormal SSEPs can result from dysfunction at the level of the peripheral nerve, plexus, spinal root, spinal cord, brain stem, thalamocortical projections, or primary somatosensory cortex." *Id.*

[2] Dr. Shibuya's examination notes state that he also saw Ms. Lagerway on June 31, 2002; that record, however, is not in this file. (R. at 149.)

[3] Oscillopsia is defined as "[c]ontinuous, involuntary, and chaotic eye movements that result in a visual disturbance in which objects appear to be jumping or bouncing." Glossary of MS Terms, http://www.nationalmssociety.org/O%20-%20R.asp (last visited Mar. 22, 2006).

2003.  (R. at 169-73, 176-77.)  She also began using a cane for balance and support.  (R. at 175-76.)  Dr. Shibuya noted a wider-based gait in February, 2003.  (R. at 175.)

Ms. Lagerway worked full-time as a cook until March 1, 2002.  (R. at 22-23.)  At that time, she decided to cut her hours to part-time because of increased leg weakness and fatigue.  (R. at 22-23, 229.)  Plaintiff filed for disability insurance benefits in August, 2002, alleging that she became disabled on March 1, 2002.  (R. at 22, 54.)  In May, 2003, Plaintiff had to quit working altogether because of her impairment.  (R. at 23, 229.)

### IV.    DISCUSSION

In her Memorandum in Support of Plaintiff's Motion to Reverse or Remand, Ms. Lagerway raises a number of issues to support her position that the A.L.J.'s determination of her disability onset date was erroneous.  (Doc. 12.)  In connection with her argument, Plaintiff asserts that: 1) the A.L.J.'s RFC assessment for the period prior to May 1, 2003 is not supported by substantial evidence because he ignored medical findings contrary to SSR 96-8p; 2) the A.L.J. erred by not consulting a medical advisor to establish an onset date; and 3) the A.L.J. improperly ignored the testimony of Plaintiff's husband.  (Doc. 9 at 4-12.)  Because I find that the case should be remanded for consultation of a medical advisor to establish a disability onset date, Plaintiff's first and third arguments do not need to be addressed in this opinion.

I agree that the A.L.J. erred by not calling a medical advisor to help determine Plaintiff's disability onset date.  Social Security Ruling ("SSR") 83-20 describes "the relevant evidence to be considered when establishing the onset date of disability . . . ."  1983 WL 31249, at *1.  The A.L.J. is to evaluate "the individual's allegation [of the onset date], the work history, and the medical evidence."  *Id.*  "The onset  date must be consistent with the medical evidence of record."

*Baca v. Shalala*, 907 F. Supp. 351, 354 (D.N.M. 1995). Here, the record may not support a finding that the onset date was March 1, 2002, but it also does not conclusively establish that the onset date was May 1, 2003. This is not unusual because of the nature of Plaintiff's disability; multiple sclerosis is a "slowly progressive [central nervous system] disease . . . ." THE MERCK MANUAL1474 (Mark H. Beers, M.D. & Robert Berkow, M.D., ed. 17th ed. 1999). "With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." SSR 83-20, 1983 WL 31249, at *2.

Dr. Shibuya's examination notes consistently reflect Plaintiff's worsening reports of leg weakness, vision problems, and fatigue since he began treating her in January, 2002. (R. at 148-49, 158-59, 175-76.) There is also objective evidence of the decline in Plaintiff's condition through medical test results. (R. at 146, 150-52, 221-23.) But there is no point at which it is clear from the medical or other evidence that Plaintiff's impairments became disabling. "[A] medical advisor need be called only if the medical evidence of onset is ambiguous." *Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995) (citations omitted). There simply is not enough evidence in this record to accurately determine Plaintiff's disability onset date, so the A.L.J. could not have "determine[d] the onset of disability with any reasonable precision." *Baca*, 907 F.Supp. at 354. "[A]ssistance from a medical expert is required." *Id. See also Hamilton*, 961 F.2d at 1497-98; SSR 83-20, 1983 WL 31249, at *1-2. Ms. Lagerway's disability "onset date is critical; it may affect the period for which [she] can be paid [benefits,] . . . [and] it is essential that the onset date be correctly established and supported by the evidence . . . ." SSR 83-20, 1983 WL 31249, at *1.

V.    CONCLUSION

In accordance with the standard of limited review, this Court has determined that this case must be remanded to the Commissioner for further proceedings, in accordance with this Memorandum Opinion and Order.

**WHEREFORE, IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (Doc. 8) is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**